This is a case involving a uniformed police officer who instructed a young woman at 1.20 in the morning to return to her vehicle and wait until he could come speak to her. Can you just jump right in and address Ramirez? That seems to me maybe the toughest case for you to overcome. I'm sorry, Ramirez, the Ramirez case. I'm not getting the name right. It's the one where the person is in the parking lot, kind of asleep. Right. Cars not otherwise obstructing anything. But what we said there was that just the concern for vandalism of the car was sufficient to justify impoundment and the like. Well, first off, I would say Ramirez goes to the point of the inventory search. And I think the strongest argument here is focused on whether or not Miss Grigsby was seized at the point the officer instructed her to go wait by her car. I frankly am not persuaded on that point. That's why I was skipping ahead. But, yeah, that's where you want to start. That's fine. But just if you could eventually get to Ramirez. Okay. Well, no, I mean, just that point. I mean, yes, it was a point that, okay, there was a concern of vandalism so they could impound the car. Here with the inventory, I think the facts of this case. That's a different point. That's a third point, whether the inventory search was properly done. Right. But on the impound, well, I prefer to go back to the beginning where you started. Sure. Okay. The seizure question. And here's my main question about that. To what degree, I understand what we say, the status of review, facts for clear error, and the ultimate conclusion is de novo. But it's kind of murky in this case what's a fact and what's an ultimate conclusion as to what an objective person would think. I mean, it seems to me that there were, that the trial court here made findings which you would disagree with and perhaps I would disagree with. But the question is whether they were clear error having to do with essentially what the fair implication of what this person was told, and whether she, because it was two properties away and because I gather she wasn't perhaps even visible to the police at the time that she was there. And the notion that, I mean, her ultimate, she made, what of what she said were findings to which we owe clear error and what were not? Right. So to address that, in Judge Snyder's order, in the background section, there was a description of facts. And then in the discussion, she says here, based upon a review of Officer Atkinson's testimony, the court cannot conclude that his instruction constituted a show of authority. So it seems that what's not in dispute is what was said by Officer Atkinson and what Ms. Grigsby did in response. But whether those statements constitute a show of authority, I would submit our finding of law that was incorrect, but that's not reviewed for clear error. Now, you cite to a lot of out-of-circuit cases, but it seems like one major difference here is, you know, the free to leave and the show of force came at different times. Here in this case, Ms. Grigsby just showed up on the scene. Right. She voluntarily put herself on the scene, and the Officer Atkinson said at least the finding was he told her to go back to her car. Right. So Ms. Grigsby started the encounter by telling the officer she was there to pick up Mr. Soto. But at that point, Officer Atkinson did not reference Mr. Soto. He said quite explicitly, calling it an instruction, return to your vehicle and wait until I can come speak to you. And I think that articulation, how it's as an instruction is a directive. So would a reasonable person feel that they're free to leave when they're instructed by a police officer in the midst of detaining someone that they're free to leave if they're directly told, wait there until I come? But the real question, I mean, to me it was sort of conditional or arguably conditional. I mean, if you want to pick up Mr. Soto, then do that. So, in fact, he did not raise Mr. Soto until the second encounter. But she came over and said, I'm here to pick up Mr. Soto. Right. Therefore, he was answering her request. Well, I mean, as he himself described it, it was for multiple purposes. It was officer safety. He also wanted to check her version. Well, see, but that does support, I mean, that supports your view because if he wants to check her version, then he wants her there. Right. Right. And then he comes over and he says, he checks her ID for some reason. We don't know why. So I just want to parse these moments, though. There's the moment in front of the hotel when he says directly to her after she's seen him and the other officer detaining Mr. Soto, go wait by your car until I come speak to you. And then the second moment when he actually goes up and says in a conditional manner, give me your ID and your date of birth so I can know who to release Mr. Soto to. And I'm saying even at the first moment when he's standing in front of the hotel and he's saying go over. What about the second one? The second one is even more heightened because, first of all, would a person feel, a reasonable person feel free to leave? I would submit that at 1 in the morning, a young woman isn't going to. So what's wrong with checking out her ID? It's 1.30 in the morning. No, I think it's fine to, in and of itself, asking for ID is fine. The point is, though, at that point she's seized. But he kept her there while he went and checked it. Exactly. Exactly. So she was seized at the point. So she was already. So now you have Judge Fischer saying maybe there's something sufficient here for a Terry's job, but that hasn't been argued, has it? Right. There's nothing to, there's no reasonable articulable suspicion to ask her. And at the point that she. Except she wants Soto, who they were talking to. He wants to know who this is, that they may or may not release Soto to her. Right. And so there's a couple of things. One is at the point he's asking her that, he has already seized her by telling her, wait there until I come talk to you. Then he goes and talks to her and says, here's the ID. And I would say that at that point he ramps up the seizure because he makes it conditional. He says, give me your personal information. Effectively, give me your personal information or your friend won't be released. That wasn't accurate. In fact, Mr. Soto was released. But he did say, give me your name and information so I know who to release Soto to. It wasn't as if there was anything independent that he was asking for. It was conditional. And she wasn't going to take custody of Soto. Right. No, there's no basis for it. So, I mean, besides the fact that it's misleading. He doesn't have a basis to keep him where they didn't. Right. Right. And so. What about the, let's skip the impoundment because I agree with that. I think it's your weakest argument. What about the actual search? So the search, inventory search can't be a ruse for general rummaging. And so there's a policy concerning an inventory search and those procedures have to be followed. Here, the El Monte Police Department policy is to search everything. When you're looking at the search of everything. They say that isn't really the policy. Right. But when, if you're searching everything, not the El Monte policy, but the general policy rationale for searching stuff, and this is under BOHE, is to produce an inventory to protect an owner and police claims against lost or stolen items. That policy goal isn't effectuated by just focusing on things of evidentiary value. So, I mean, it's a signal that this is not a general inventory search, that it's an investigatory search when he only cares about. Because apparently the more you search, the better it is. Right. Yeah. And so. I mean, it's a hard doctor to work with when the problem that we're going to deal with is that they didn't search enough. I agree. And so the government argues dual purpose. And I would submit that that would be the exception following the rule. So if you say, oh, well, we would have searched anyways, then no inventory search would ever be considered a general rummaging because, and not an investigatory search. Rummaging. That's what's so bizarre. Of course it's a general rummaging. The whole point is you're supposed to look at everything and write everything down. How could that not be a general rummaging? Well, I think. If you're going to look at everything there is and note everything there is, then among the things you're going to look at and note are things of evidentiary value, but you're going to look at and note everything. I understand we have doctrine, but it's a really hard doctrine to figure out how to work with. I mean, I. Do with it. Yeah. I just. At the point that he enters the car, he doesn't have any reasonable or particular suspicion. So. But the question is when he's looking. So he should have searched more than he did. Or he should have written down more than he did. Which one? Or the way he searched. The problem is what he searched or what he wrote down. The way he wrote down shows that he wasn't actually trying to do a thorough inventory or policy. He could have done a thorough inventory and just not written it down. Before you sit down, could you answer the question I posed to you initially? Because I actually think your best argument is the impoundment was improper. So what is your best argument for distinguishing Ramirez? Is that at the basis of the search of Ramirez, there's nothing suggesting kind of the dual motive that there's, I don't want to say improper, but an investigatory motive. And here I think there is. She's suspicious for some reason because of her connection to Soto. But he doesn't actually have a reasonable or particular suspicion as to her. But he still goes ahead and does it anyways. And then comes up with that rationale. You're talking about the impoundment now? Yeah. But I thought the question as to the impoundment is whether he had some reason. Community safety or whatever it's called. A reason to think the car's got to be gotten out of there. Right. But in the record, in his declaration, he arrests her based on the warrant. And then he's driving her away. And then he asks, do you want to get anything out of the car? So it suggests that he wasn't even trying to impound the car at the point he arrests her. I mean, she's arrested, as I understand it, some distance away from the car. There's one property in between where they stop her in front of the hotel. Then there's another property. And then there's the 7-Eleven parking lot. Right. But, I mean, it's almost sort of happenstance that the officer even was aware that she had driven to that location. Right? I mean, I know he's able to see her. But I don't know. If you got arrested right here, the police came in here and arrested you, could they go and – I mean, then they figure, hey, you probably drove here. Let's go impound your car because it's in the parking lot. That, to me, is – like, what connection does my car have to do with the fact that you're arresting me here? That's how I kind of see the problem with the government. I mean, that's what I want to ask the government. But, anyway, that's – all right. All right. Thank you very much. We'll give you a minute to get a bottle. Sir. Good morning. It may please the Court. My name is Suresh Appleby Bhattacharjee for the United States. I want to start, Your Honors, with Judge Berzon's comment that it's murky what is a factual finding and what's a legal conclusion of the record. And I would submit that the district court here made clear factual findings regarding defendants' motivations for arriving and remaining at the scene where she was arrested. Did she make factual findings about that? Yes, Your Honor. I would turn – I don't know what's the relevance of them, anyway. Well, perhaps if we were to tackle the seizure question first, if I could briefly articulate what the legal standard is driving whether or not there's a Fourth Amendment seizure in the first place and where the district court's factual findings fit into that overall analysis. So, here, defendant is arguing that there was a seizure within the meaning of the Fourth Amendment when the officer requested the defendant wait by her car and wait for the officer to come speak with her. And in order to be articulable under the Fourth Amendment as a seizure, there must be two things. First, the defendant's freedom of movement must have been constrained either by physical force or by a show of authority. And second, of course, that a reasonable person under the same or similar circumstances would not feel free to terminate the encounter. As to that first prong, the district court here at ER 203 specifically noted that defendant chose to stay and wait for Officer Atkinson and then accompany him to meet with Soto, presumably because she wanted to pick up Soto and expected that Soto would be released to her and not because her freedom to move was restrained. The government would submit that that is a factual finding. There are two competing inferences here. One, that defendant remained at the scene because of the instruction that was put to her. And second, that defendant remained at the scene because, as Judge Fischer noted, she's the one who initiated this encounter with the police in the first place. She showed up to the scene with an ulterior motive. I want to leave the scene. Okay, so then the police officer comes to her and says, I want your ID, and then he runs a check. Is that part of the same supposed consent? So the first thing I would say in response to the request for ID, Your Honor, is that this is not a claim that was made below. If you look at Judge Snyder's detailed 15-page order, there's no analysis whatsoever about whether the request for an ID in the broader context constitutes a seizure. It's not really so much the request for the ID, because as I understand the case, though, you couldn't request an ID. And you can also search for incriminating nonpublic information based on the ID. And you can make somebody stay there while you do it? Well, Your Honor, again – But you can't, unless you have a ground for a Terry stop. And, again, the question is whether the defendant was staying at the scene because – I understand. That's the question I asked you. Is there a finding by Judge Snyder? Again, I believe that the district court here made the specific finding the defendant chose to stay and wait for Officer Atkinson and then accompany him to meet Soto. All of that is happening because she has the ulterior motive to leave the scene. Including staying there long enough for him to do this ID search, ID check? I would say the plain language of the factual finding that I read at ER 203, I believe, encompasses the period that Your Honor is talking about. To the extent there's any ambiguity in the record about whether the defendant voluntarily stayed through the ID check, I would submit that's because this claim was not presented below. And so this claim that the request for ID staying while the ID check was being run, et cetera, ramped up and extended the alleged seizure, I would submit as subject to plain error review, which means that the defendant here bears the affirmative burden of showing that there was a clear, obvious constitutional error. Now, looking at the case law that the government cites in its answering brief, the Diaz-Castaneda case, the Kim case, the Irwin case, all of these cases are unanimous in holding that the mere request for an ID and in Diaz-Castaneda even using that ID during the course of a traffic stop to search for non-public incriminating information. During the course of a traffic stop because you have a basis for stopping the person. I mean, do we agree at least that there was no basis for stopping her? The government is not arguing that Officer Atkinson was conducting a Terry stop, that there was no reasonable suspicion. Their brief at one point asserts, as I recall, that you can just ask somebody for their ID and make them stay there while you're doing search without any suspicion, but you're not arguing that. Your brief seems to say that at one point. Well, again, Your Honor, I think it's a two-part inquiry. Can the government ask for the ID and look for non-public information with that ID? And the question is, what's your answer to that? And my answer to that first part of the question is, yes, the government can ask for ID. Somebody can just come up in the street to me and say, give me your ID and stay here until I go check whether you have any warrants out for your arrest. Well, I don't believe the factual record at all suggests that. I know, but that's what I'm asking you because that's what you said in your brief. I don't believe that that's the claim that was made in our brief. I believe the claim that was made in our brief is there was no seizure at the outset. I understand. There was no seizure at the point. I know there may have been no seizure at the outset, but if there was a seizure when they made her stay there while she went and checked her ID, then the question is, can they do that? If the court were to conclude at some point during the initial encounter through the ID being checked that there was, in fact, a Fourth Amendment seizure, I agree with you, Your Honor. There has to be some objective basis that the government has to point to. My point is that the district court was not incorrect in saying that at no point was there a seizure. And as to this specific request for identification, the record is, first of all, not developed enough to really assess the facts of that claim. And I believe the adverse effects of that should fall to the defendant under plain error review because the defendant here raised a Fourth Amendment seizure claim in a reply brief below, and in the course of raising it for the first time in a reply brief, getting the opportunity, having raised a new claim in a reply brief to fully litigate it below, never presented this case to the district court. And so I would transition from there to the point where there was a Fourth Amendment seizure, and that's at the point of the defendant's arrest. The defendant was arrested. That did constitute a Fourth Amendment seizure. And below, the defendant argued that her arrest was not supported by probable cause. That's not an argument that's been made now on appeal, so the government would submit that it's waived. So really the only remaining question is the propriety of the impound and inventory search. And here again, Judge Berzon, I would submit that the record is not murky with respect to the district court's factual findings regarding what animated or what motivated the officer's request. That's not – our case law, unlike the case law in the Eighth Circuit case that she was relying on or that you were relying on, seems quite clear that if the procedures weren't followed or were substantially followed, that is a stand-in for any direct pretext finding, and we don't go any further. We don't ask what their motive was directly. We just say if you're not following the rules, it's not a good search. So I'm not sure which case Your Honor is specifically relying on. I will say looking at the Supreme Court's case law and this circuit's case law that's cited in our brief, the standard is good-faith compliance. If we start with Florida v. Wells, one of the – What about our recent decision in Johnson? So in Johnson, I would submit, Your Honor, Johnson is distinguishable and Johnson relies upon Orozco, also plainly distinguishable because in the records in both of those cases, the officers flatly admitted that they would not have done the search but for an investigatory motive. The investigatory motive was the sole motive. You don't think the question of whether they were following the protocols matters? I would not go that far, Your Honor. I believe that the question of whether they were following protocols – It's just an indice of motive, but it's not separately dispositive. It's not separately dispositive. It goes to the question of whether the search was initiated with an impermissible motive or an – My problem with your argument is that she was not – First of all, the car has nothing to do with the offense for which she was arrested. So there's no nexus whatsoever there. And she's not even arrested. The point at which she's arrested, she's away from the car. It's kind of just – it's – So let me just put the question to you. Under your argument, if the officers came in and arrested you – I assume you drove here and you parked in our parking lot. So if the officers came in here and arrested you and they said, hey, do you want to get anything out of your car? And you said, yeah, I want to get my phone. They say, okay, we'll walk with you out there. And then at that point they get to impound your car? Well, Your Honor, I – You would say yes because that's basically what happened in this case. I would say yes and citing on two different lines of authority in the record here. So first is California Vehicle Code Section 22651H. I'm talking about the Fourth Amendment. Why would the Fourth Amendment permit the officers to impound your car? There's no reason for them to do that whatsoever. I would submit, first of all, the officers, it appears from the record, know that defendant arrived at the scene in a car. Let's say they didn't. Let's say they didn't see that and she said to them as they were handcuffing her, oh, but I need my phone out of the car. And they said, where's your car? And she said, oh, it's three blocks away. And they said, okay, we'll take you over there. Your position has to be that, yeah, they still could impound the car at that point, right? If it's justifiable under the community caretaking function, I believe the answer is yes because the car is still at the scene of the arrest. I understand that there's a question about whether there's the 7-Eleven parking lot at an adjacent property. For purposes of the community caretaking, this is another weird doctrine. Why does it matter if she was arrested? Suppose there's just a car there and they say what they're saying here, i.e., well, there's nobody here and I can't find anybody here to drive it away. Anybody here? No. And so this is a high-crime area. I think we'd better take the car. Can they do that? Well, so in certain circumstances, the community caretaking doctrine allows for the impoundment of a car without a formal arrest, such as in situations where the car tags are expired or where the registration is expired, different kind of administrative reasons that. I once had my car towed from the front of my house, but that's a different story. And so in that situation, Your Honor, what the community caretaking function requires is that the officers point to objective facts in the record, suggesting either that the car poses itself a safety risk or, in this case, and this Court's decision recently, United States v. Torres, affirms that one of the bona fide community caretaking functions is to protect a defendant, an arrested defendant's car, against the risk of theft or vandalism. Can we go back to the inventory search? You asked me what case. Okay, here we go. What do you do with United States v. Caceres? Anything observed in the vehicle during the inventory search is admissible. Such warrantless inventory searches of vehicles are lawful only if introductive, pursuant to standard police procedures that are aimed at protecting the owner's property and at protecting the police from the owners charging them. I believe that that citation, Your Honor, is perfectly consistent with what the Supreme Court said in Colorado v. Bertin. The search has to be conducted pursuant to a standardized policy. That quotation does not say. Even if it ignores the policy? But it's not about ignoring policy, Your Honor. I would submit it's about strict compliance. Whether the failure to strictly. But in this instance, as I understand it, the only things that were recorded were evidentiary things. And they said they were looking for high-value things, but there were high-value things that weren't recorded, like a cell phone and some other thing. I forget why. Well, the cell phone was booked with the defendant. But there's something else. It was booked? I'm sorry? The defendant, with her property at the time of arrest, her personal property, the cell phone, was booked with her as personal property that was in her possession at the time of arrest. So it wasn't kept with the car. But in any event, the only things that – there was a cross-reference in the inventory form to essentially – to be related to the criminal arrest. And the only things that were on that form was evidence. And there were all these bags that were full of clothes and other things. Most of what was in that car was – I don't know if – you can't quite tell whether it was looked at, but it certainly wasn't recorded. So I have two points in response to that. Again, bringing the court back to what the government submits is the standard. Was there good-faith compliance policy? I just read you our standard. That's the standard. Was there good-faith compliance? Well, certainly there wasn't. I mean, if somebody was going to look at whether this person followed the rules, you didn't. Well, that wasn't the district court's finding. The district court found that the policy requires and does have a good-faith safe harbor. The policy requires that the officers must be as thorough, as practical under the circumstances. Okay. And here the car was chock-full of different items. Some had evidentiary value, some didn't. The government would submit that the analysis here doesn't change just because the high-value items – The car items. Well, it was in the middle of the night in a high-crime area. Officer Atkinson did testify that the booking procedures of EMPD required two officers to book the defendant. Couldn't they do it after they got the car to the station if they really were doing it? So – If they were doing it. I would submit there are alternatives here. There are alternative ways that this could have gone. But Colorado versus – But on the notion that this was the only thing that was practical, that's clearly not true. They could have just taken the car and done it after they got there. That – so they could have done that. So it's not true that it wasn't practical. It is – the district court credited the officer's explanation that he was logging some of the items in the car so that he would know before the car was ever impounded what was in the car. And the Supreme Court in Colorado versus Bertini – Is it even debatable that he did not follow the written-down protocol, even ballpark? I believe it is certainly debatable, and the district court found here, given the good-faith safe harbor in the policy itself, that the officer did comply with the policy. What's the good-faith safe harbor in the policy? Again, if you look at – Language of practical? Yes, Your Honor. Well, that's not a good-faith safe harbor. It's a standard, practical. Right, practicality. And, again, practicality as opposed to absolute and unequivocal compliance. But he didn't do anything except write down the evidentiary stuff. I mean, it's – I mean, I just think we would be hypocritical or, you know, blinking reality to say that this is what he was doing. Now, again, it's a crazy standard because the standard is if you search more, it's better than if you search less. But that's the standard. Well, I suppose one way I would offer to give the court some comfort is that the court is obviously able to affirm on any basis supported by the record. And as the government noted in its brief below, one of the ways that the government argued that the search here could be justified is upon the officer's lawful initial entry into the vehicle. If we are to assume that the officer's initial entry was lawful, the policy here clearly said that the officer was permitted to search all containers and not, in fact, permitted but required to search all containers in the vehicle. And upon searching the vehicle, upon opening the first container, the officer finds 300 stolen access devices and at that point has probable cause that a crime has been committed. So the government argued below that as long as the initial entry into the vehicle was justified under the inventory policy, once the officer independently developed probable cause that a crime had been committed, the auto search exception should take over and justify the search. Similarly, if the court were to look at any basis in the record to affirm the Plainview Doctrine operates in the exact same way. The Plainview Doctrine requires that the officers are lawfully present in the place to be searched and that the illegal nature of the items to be seized is immediately apparent to the officers. That's clearly apparent here. I see that my time is certainly up. Thank you, Your Honors. Thank you, Your Honors. Briefly, Your Honors, as to what constitutes show of authority, I just point to Hernandez. When the police officers said, stop right there, I need to talk to you, that constitutes a show of authority. And here we have two other points. Of course, there you had somebody running away, and here you have somebody who walked up to the police. Right. But when you go walk up and then say, stop, go to your car, wait until I talk to you, I think a reasonable person would say, I'm not free to leave because their directive is, I need to wait until they come talk to me. And then there's the second point when it's ramped up and it's saying, all right, the police know that she's there to pick up Mr. Soto, and she says, we basically won't release Soto until you gave us your name and your date of birth. And so that ramps it up, and that is conditional, so that why would she feel free to leave if basically the reason she's there is to pick up Soto and he won't be released until she gives the information. But I still want to point out that the standard is, would a reasonable person feel free to leave at the point that they're ordered to wait by their car? What about his point about the findings below? I suppose you could read them in one of two ways. I mean, you might read the sentence about she chose to do this as contingent on the predecessor sentence that said that she was free to leave, which would be not a fact finding. Or you could read it independently, which was a finding about her motivation. And if it was a finding about her actual motivation, why wouldn't that be binding on us? I mean, I think Judge Snyder's own wording suggests it's not. I'm sorry, what? Judge Snyder's own wording saying she presumably was there for Mr. Soto. But she said she chose to stay there. That's what she said. Right. But I think the choosing to stay there was, I think, the question of whether she submitted to the authority. And I'm saying that that's. It was contingent on the finding in the sentence before that she was free to leave. Yes, exactly. So it's not an independent factual finding. Yes, exactly. And then just the other point was in terms of not following protocol. You know, what was not included was a large purse, several duffel bags. I mean, this is big items and they're not. What about the alternative argument that once they started the search and found what they found, that it would turn into a search incident to arrest? I mean, I think then that would be the exception following the rule because then general rummaging, if you're not following the protocol but then you somehow find something, then it would. You see, this is what an odd thing about this case. I mean, I can't tell whether they were following protocol as to the search. They really weren't following protocol as to what they wrote down. But what does the record suggest to you about whether they went through everything systematically? I mean, first off, we know that they weren't even interested in the car until she said, I want to get my phone out of the car. And then they asked to search. She says, I have rights. I'm not going to ask you. And then they get more interested. And so then when they have this interest, their interest is piqued. And I submit that the general rummaging is the fact that they're only focusing on the evidentiary value. Do we know whether the inventory search, the search, not what they wrote down, followed protocol? I think the only way to find out how it was done is to look at the written record. I don't think there's anything else to point us to. I don't know. I'm asking you what the record shows about that. Oh, yeah. So the only thing we have, I think, is the inventory, which doesn't include all these big items. But we don't have any testimony that they went through everything systematically. Or they didn't. Well, we do have the declaration of Officer Atkinson. And that's how we know that they found things like a large purse and several duffel bags. And he put that subsequent in his declaration. But that wasn't included in the initial report. You're not really answering my question. Okay. Thank you very much. Sorry, I didn't understand. Maybe it's just not there, which is why you're not answering it. I think it's not there. Okay. Thank you very much. The case of United States v. Grigsby is submitted. We will take a short break. Thank you.
judges: Fisher, Berzon, Watford